UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RAMADA WORLDWIDE INC., formerly known as RAMADA LICENSE SYSTEMS, INC., a Delaware corporation, | **OPINION** |
| Plaintiff, | Civ. No. 13-07784 (WHW)(CLW) |
| v. | |
| APS CORPORATION, a Virginia Corporation; PANKAJ P. PATEL, an individual; KANTILAL C. PATEL, an individual, and GUNATITPRA PATEL, an individual, | |
| Defendants. | |

**Walls, Senior District Judge**

Plaintiff Ramada Worldwide Inc., formerly known as Ramada License Systems, Inc. ("RWI") moves under Fed. R. Civ. P. 55 for default judgment against Defendants APS Corporation ("APS"), Kantilal C. Patel, and Gunatitpra Patel. RWI filed this action on December 23, 2013 alleging that Defendants APS, Pankaj P. Patel, Kantalil C. Patel, and Gunatitpra Patel breached a license agreement with RWI to operate a lodging facility. RWI dismissed its claim against Pankaj P. Patel, but the remaining Defendants have failed to plead or otherwise defend the lawsuit. Decided without oral argument under Fed. R. Civ. P. 78, Plaintiff's motion is granted.

### PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff RWI is a corporation organized and existing under the laws of South Dakota, with its principal place of business in Parsippany, New Jersey. Compl. ¶ 1, ECF No. 1.

1

Defendant APS Corporation is a corporation organized and existing under the laws of Virginia, with its principal place of business at 2500 Riverside Drive, Danville, Virginia. *Id.* ¶ 2. Defendant Pankaj P. Patel is a principal of APS and a citizen of the state of Virginia, with an address at 2500 Riverside Drive, Danville, Virginia. *Id.* ¶ 3. Defendants Kantilal C. Patel and Gunatitpra Patel are also principals of APS and citizens of the state of Virginia, both with an address at 1905 Coliseum Drive, Hampton, Virginia. *Id.* ¶¶ 3-4.

On or about June 30, 2004, RWI entered into a license agreement with APS for the operation of a 134-room Ramada® guest lodging facility located at 1905 Coliseum Drive, Hampton, Virginia, Site No. 15084-8019-1 (the "facility"). *See* Aff. of Suzanne Fenimore in Supp. of Mot. for Final J. by Default as to APS Corporation, Kantilal C. Patel, and Gunatitpra Patel ("Fenimore Aff.") ECF No. 11-3 ¶ 3. APS assumed multiple obligations under the license agreement. Under section 5 of the license agreement, APS was obligated to operate a Ramada® guest lodging facility for a fifteen-year term. *See id.* Ex. A. Under section 7, section 18.1, and Schedule C of the license agreement, APS was required to make certain periodic payments to RWI for royalties, system assessment fees, taxes, interest, reservation system user fees, and other fees (collectively, the "Recurring Fees"). *See id.* Ex. A § 7, § 18.1, Schedule C; *id.* Ex. B (Aug. 18, 2005 amendment modifying section 18.1). APS also agreed, under section 7.3 of the license agreement, that interest was payable "on any past due amount payable to [RWI] under this [License] Agreement at the rate of 1.5% per month or the maximum rate permitted by applicable law, whichever is less, accruing from the due date until the amount is paid." *Id.* Ex. A § 7.3.

Under section 3.8 of the license agreement, APS was required to disclose to RWI, among other things, the amount of gross room revenue earned by APS at the facility in the preceding month for purposes of establishing the amount of royalties and other Recurring Fees due to RWI.

2

*Id.* Ex. A § 3.8. Also under that section, APS agreed to maintain at the facility accurate financial information relating to the gross room revenue of the facility, including books, records, and accounts. *Id.* APS agreed to allow RWI to examine, audit, and make copies of the entries in these books, records and accounts. *Id.*

Section 11.2 of the license agreement provided that RWI could terminate the license agreement, with notice to APS, upon APS's (a) failure to pay any amount due RWI under the license agreement, (b) failure to remedy any other default of its obligations or warranties under the license agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the license agreement, and/or (c) receipt of two or more notices of default under the license agreement, whether or not the defaults were cured. *Id.* Ex. A § 11.2. Under section 12.1 of the license agreement, APS agreed that, in the event of a termination under Section 11.2, APS it would pay liquidated damages to RWI in accordance with a formula specified in the agreement. *Id.* Ex. A § 12.1. Specifically, Section 18.2 of the agreement set liquidated damages at $1,000.00 for each room at the facility APS was authorized to operate at the time of the termination. *Id.* Ex. A § 18.2. APS also agreed, under section 17.4 of the license agreement, that the non-prevailing party would "pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement." *Id.* Ex. A § 17.4.

Effective as of the date of the license agreement, Pankaj P. Patel, Kantilal C. Patel, and Gunatitpra Patel provided RWI with a guaranty of APS's obligations under the license agreement. *See id.* Ex. C, Guaranty. Under the terms of the guaranty, the individual Defendants agreed, among other things, that upon a default under the license agreement, they would "immediately make each payment and perform or cause [APS] to perform, each unpaid or

unperformed obligation of [APS] under the [License] Agreement." *Id.* Ex. C. Pankaj P. Patel, Kantilal C. Patel, and Gunatitpra Patel also agreed, under the terms of the guaranty, to pay the costs, including reasonable attorneys' fees, incurred by RWI in enforcing its rights or remedies under the guaranty or the license agreement. *Id.* Ex. C.

Beginning at least in 2011, APS repeatedly failed to meet its financial obligations under the license agreement. Fenimore Aff. ¶ 16. By letter dated December 29, 2011, RWI advised APS that (a) it was in breach of the license agreement because it owed RWI approximately $168,416.92 in outstanding Recurring Fees, (b) it had 10 days with which to cure the monetary default, and (c) if the default was not cured, the license agreement might be subject to termination. *See id.* Ex. D. RWI sent follow-up letters to APS containing the same information but with mounting Recurring Fees, informing APS that it was in breach of the license agreement and owed approximately $176,224.76 in outstanding Recurring Fees by letter dated February 13, 2012, *see id.* Ex. E, and that it owed approximately $189,608.03 in outstanding Recurring Fees by letter dated April 10, 2012, *see id.* Ex. F. By letter dated April 17, 2012, RWI terminated the license agreement effective April 17, 2012 and advised APS that it was required to pay RWI $134,000.00 in liquidated damages for premature termination and all outstanding Recurring Fees through the date of termination as required under the license agreement. *See id.* Ex. G.

On February 14, 2014, RWI filed a complaint in this matter seeking all liquidated or actual damages and Recurring Fees due under the license agreement, together with interest, attorneys' fees, and costs of suit from APS and the individual Defendants. ECF No. 1; Certification of Bryan P. Couch in Supp. of Mot. for Final J. by Default as to Defendants APS, Kantilal C. Patel, and Gunatitpra Patel ("Couch Cert.") ¶ 3. RWI withdrew its complaint against Pankaj P. Patel only

under Federal Rule of Civil Procedure 41(a)(1)(A)(i) on October 7, 2014, and the action was dismissed against Pankaj Patel without prejudice. ECF No. 10.

On December 23, 2013, RWI forwarded the summons and complaint to Recon Management Group to effectuate personal service upon the remaining Defendants. Couch Cert. ¶ 4. Despite diligent efforts and inquiry, Recon claims it has been unable to locate the Defendants *Id.* ¶ 5; Ex. A (Affidavit of Diligent Efforts). On July 29, 2014, RWI served Defendants with the summons and complaint by certified mail, return receipt requested, and regular mail. *Id.* ¶ 6; Ex. B (summons and complaint letter). The time in which Defendants had to answer or otherwise respond to the complaint expired, and they have not answered or otherwise moved. Couch Cert. ¶ 7. The Clerk of the Court entered default against Defendants APS, Kantilal C. Patel, and Gunatitpra Patel on September 26, 2014 for their failure to plead or otherwise defend this action. *Id.* ¶ 8. By letter dated October 10, 2014, RWI served a copy of the default upon Defendants. *Id.* Ex. C. By nature of its status as a Virginia corporation, Defendant APS is not an infant or otherwise incompetent nor presently engaged in the military service of the United States or its allied nations. Couch Cert ¶ 11. On February 25, 2016, the Defense Manpower Data Center verified that Defendants Kantilal C. Patel and Gunatitpra Patel are not in the military service of the United States or its allied nations. *Id.* ¶¶ 12-13; Couch Cert. Ex. D (Kantilal C. Patel report); Ex. E (Gunatitpra Patel report).

RWI moved for default judgment against Defendants APS, Kantilal C. Patel, and Gunatitpra Patel on February 26, 2016. ECF No. 11. RWI seeks Recurring Fees in the amount of $305,138.86 inclusive of interest (calculated at the rate of 1.5% per month under section 7.3 of the license agreement) against Defendants. *See* Fenimore Aff. Ex. H. RWI also seeks liquidated damages in the amount of $134,000, calculated at a rate of $1,000 for each of the 134 guest rooms

APS was authorized to operate at the facility at the time of termination, as provided in Section 18.2 of the license agreement. *Id.* ¶¶ 26-27; *Id.* Ex. A § 18.2. RWI also seeks interest on the liquidated damages in the amount of $92,776.32 (calculated at the rate of 1.5% per month between May 17, 2012, 30 days from the date of the termination of license agreement, and March 21, 2016, the return date of RWI's motion for default judgment). Fenimore Aff. ¶ 28. In total, RWI seeks the $531,915.18, inclusive of Recurring Fees, liquidated damages, attorneys' fees, and costs, allegedly due it as of March 21, 2016. Fenimore Aff. ¶ 29; *Id.* Ex. I (itemizing amounts allegedly owed).

## STANDARD FOR DEFAULT JUDGMENT

When evaluating a motion for default judgment under Fed. R. Civ. P. 55, courts in the Third Circuit consider three factors: (1) whether there is prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). A court must treat "the factual allegations in a complaint, other than those as to damages . . . as conceded by the defendant." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005). A court must also make "an independent inquiry into whether the unchallenged facts constitute a legitimate cause of action" and "must make an independent determination" regarding questions of law. *See Days Inn Worldwide, Inc. v. Mayu & Roshan, L.L.C.*, No. 06-1581, 2007 WL 1674485, at *4 (D.N.J. June 8, 2007) (citations omitted). Similarly, a court does not accept as true allegations pertaining to the amount of damages, and may employ various methods to ascertain the amount of damages due. While the court may conduct a hearing to determine the damages amount, Fed. R. Civ. P. 55(b)(2), a damages determination may be made without a hearing "as long as [the court] ensure[s] that there [is] a basis for the damages specified in the

default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## DISCUSSION

### I.     Default Judgment is Appropriate

This action is based on the Defendants' breach of contract. The elements of such a claim are "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). Here, the parties entered into the license agreement and guaranty for the operation of a lodging facility. Defendants breached those contracts by failing to meet their financial obligations to RWI under the license agreement. Damages flowed therefrom because RWI performed services without being compensated for them. RWI performed its own contractual obligations under the license agreement because it performed the services promised. *See* Fenimore Aff. Ex. H (itemizing the services RWI performed, for which it charged APS the recurring fees). RWI has pled the elements of this claim and put forth unchallenged facts which constitute a legitimate cause of action.

Under the *Chamberlain* factors, default judgment is appropriate. RWI will suffer prejudice if default is denied because it has already waited nearly four years since the breach of the license agreement to be paid the recurring fees, attorney's fees and court costs to which it is entitled. Defendants APS, Kantilal C. Patel, and Gunatitpra Patel have not presented any facts or arguments to suggest they have a litigable defense for their breaches of contract. It is not clear if their failure to litigate is the result of willful or bad faith conduct, though they have failed to retain counsel in the nearly twenty-seven-month period since the filing of the complaint. Having considered these three factors, the Court finds that default judgment is appropriate.

## II. The Amount of Damages Is Satisfactorily Established

RWI seeks damages that include the Recurring Fees ($305,138.86 including interest calculated at 1.5% per month under section 7.3 of the license agreement) and liquidated damages ($226,776.32 including interest calculated at 1.5% per month). The Court has reviewed RWI's submissions and finds that these amounts accurately represent the amount Defendants owe RWI under the license agreement and guaranty, inclusive of attorneys' fees and costs. *See* Fenimore Aff. ¶¶ 21-29; *id.* Ex. A § 18.2 (providing calculation for liquidated damages); *id.* Ex. H (Itemized Statement of Recurring Fees); *id.* Ex. I (Itemized Statement of Amount Due). Judgment will be entered against Defendants APS, Kantilal C. Patel, and Gunatitpra Patel in the amount of $531,915.18.

## CONCLUSION

Plaintiff's motion for default judgment is granted. Judgment is entered against APS, Kantilal C. Patel, and Gunatitpra Patel in the amount of $531,915.18. An appropriate order follows.

DATE: 17 May 2016

William H. Walls
Senior United States District Court Judge